(96 South. 275)

No. 25370.

### STATE v. YOUNG.

(Nov. 9, 1922. On Application for Rehearing, Nov. 27, 1922. On Rehearing, April 2, 1923.)

*(Syllabus by Editorial Staff.)*

1. **Witnesses** &#9758;387—**Cross-examination of witnesses as to whether they had not testified differently in another case held improper, as creating false impression.**

On trial for perjury committed in civil suit, where defendant's witnesses testified precisely as in the civil suit, it was improper to ask on cross-examination whether they had not testified differently, thus creating false impression and weakening their testimony.

2. **Criminal law** &#9758;723(1)—**Argument outside records as to jury's property rights held improper.**

On trial for perjury committed in civil suit over property rights, it was improper for state's counsel, in their arguments, to go outside the record and refer to the juror's rights as property owners and hypothesize an attempt by some one to take their property away from them.

3. **Criminal law** &#9758;720(5)—**Argument that trial judge had not believed defendant and his witnesses in another case held improper.**

On trial for perjury committed in a civil case, district attorney's argument that trial judge had not believed testimony of defendant's witnesses to the same effect in a civil case was improper, as bringing in comment by trial judge on the facts.

### On Rehearing.

4. **Criminal law** &#9758;1083—**Trial judge before appeal may reserve right to do thereafter anything necessary to have record show what took place.**

Granting of appeal divests trial court of jurisdiction to exercise judicial discretion or judgment, but, as to ministerial duties necessary to have record show what took place, it has power, within reasonable bounds before granting appeal, to reserve the right to do thereafter whatever is necessary.

5. **Criminal law** &#9758;1092(10)—**Lies to compel signing of bill of exceptions.**

Signing of bill of exceptions is so much a ministerial duty that, when timely applied for, mandamus will lie to compel its performance.

6. **Criminal law** &#9758;1092(13)—**Trial judge must, when bill of exceptions timely presented, at least state his conception of what took place.**

Trial judge cannot be compelled to sign bill of exceptions reciting facts which, according to his recollection, did not happen, but when bill is reserved and timely presented, must at least state his conception of the matter.

7. **Criminal law** &#9758;1092(9)—**Trial judge, before losing jurisdiction, may grant time for preparing bills of exceptions.**

When time for presenting bills of exceptions is requested before appeal, the judge, in exercise of sound discretion, may refuse or

grant it within reasonable limits, not exceeding completion and filing of the transcript within the return day, provided he acts before losing jurisdiction.

**8. Criminal law ⟨⟩1094—Defendant waives or abandons bills of exceptions, by appealing before they are signed or without obtaining time to present them.**

If accused obtains an appeal before bills of exceptions are signed or without being given time in which to present them, he waives or abandons them.

**9. Criminal law ⟨⟩730(8)—Improper argument not cured by telling counsel to stay within record or jury to disregard it.**

Argument on trial for perjury committed in civil suit, that trial judge had not believed defendant's witnesses when they testified to the same facts in the civil case, was not cured by telling counsel to stay within the record or jury to pay no attention to it.

Land and St. Paul, JJ., dissenting on the original hearing.

Appeal from Third Judicial District Court, Parish of Claiborne; J. E. Reynolds, Judge.

Sam Young was convicted of perjury, and he appeals. Verdict and judgment set aside, and case remanded.

Thomas W. Robertson and T. T. Land, both of Shreveport (M. H. Carver, of Natchitoches, Steve Carrigan, of Hope, Ark., and David Blackshear, of Homer, of counsel), for appellant.

A. V. Coco, Atty. Gen., E. A. O'Sullivan, Sp. Asst. Atty. Gen., and W. D. Goff, Dist. Atty., of Arcadia (T. S. Walmsley, of New Orleans, and H. B. Warren, of Ruston, of counsel), for the State.

PROVOSTY, C. J. Accused was convicted of perjury, alleged to have been committed in a civil suit, and was sentenced to one year in the penitentiary.

The said suit involved the title to a certain tract of oil land; and the issue was as to whether Mattie Magee had died after Lona Scott. Accused testified that she had; and the sole issue in the present case was as to the verity of that statement.

[1] After several of the witnesses for accused had testified that Mattie Magee had died after Lona Scott—precisely as they had testified in the civil suit—they were asked, on cross-examination, whether they had not testified in the civil suit that Mattie Magee had died before Lona Scott. Inasmuch as these witnesses had testified precisely as on the previous occasion, these questions could not possibly have been asked for the purpose of impeachment. The learned trial judge says in his per curiams to the several bills of exception that they were asked "to test the credibility and power of recollection of the witnesses." How this could be when the witnesses were testifying precisely as they had done before, we are at a loss to conjecture. Accused complains that the questions were propounded purely for the purpose of creating the impression that his witnesses were testifying differently; thereby to weaken, if not destroy altogether, their testimony. So impressed are we with that view—considering that not one witness only was thus questioned but several—that we should probably feel compelled to set aside the verdict on the ground of the trial having been rendered unfair by this course of questioning, if a more clear ground of avoidance were not found in the record.

[2] Which is that the district attorney and other counsel for the state, in the course of their arguments to jury, made statements unjustified and clearly prejudicial.

The Gulf Refining Company had been the principal party in interest on the side of plaintiff in the said civil suit in which accused had testified for defendant, and had been active in getting up evidence against accused, and had not spared expense in that endeavor. This must have cropped out on the trial. Probably from the witnesses for the prosecution having been asked whether the said company had not paid their traveling and other expenses incident to their at-

tending the trial. One of the assistant counsel for the prosecution said to the jury:

"Gentlemen of the jury, you own property in this parish and if some one is attempting to steal your property, as in this case, you would feel mighty good if the Gulf Refining Company was helping you to fight the case, and you would welcome their assistance. Now you do not know what day some one will try to take your hard-earned property away from you, and the object of this case is to stop such proceedings. Yes; the Gulf Refining Company did pay the witnesses in this case, and I think they did right in doing so."

All this was outside of the record, and foreign to the issue; and, as a whole, was clearly prejudicial. It tended to enlist the pecuniary interest of the jurors, at least of those who were landowners, against the accused.

And so also was the following, from the district attorney:

"Gentlemen of the jury, Senator Warren, who has assisted me in this trial, was employed by the taxpayers of Claiborne parish to see that justice was done in the protection of your rights as property owners of this parish."

[3] The district attorney also said:

"Gentlemen of the jury, this case was tried by his honor there, and he did not accept the evidence of defendant's witnesses, and I don't believe you will do so either."

This last statement was practically lugging into the case a comment by the presiding judge on the facts of the case—a thing prohibited by statute. Again, there was no evidence in the case going to support the assertion thus made.

Before the present opinion had been handed down, but after it had been adopted by the court, a supplemental brief was filed, calling the attention of the court to the fact that the bills of exceptions had been approved by the judge after an appeal had been granted in the case. The appeal was granted on the fifth, and the bills were signed on the ninth. The bills were, however, filed as of the fifth, in pursuance of an agreement entered

153 LA.—20

into as an accommodation to the judge, by which ten days should be allowed for their being filed. Such an arrangement, by which bills of exception are to be acted on by the judge after appeal, has heretofore had the sanction of this court. The fact of such an agreement having been entered into in this case does not appear by the record, but only by sworn statements of judge and clerk and counsel filed in this court, since the above-mentioned brief was filed. Should any question arise as to the fact of the said agreement having been entered into this court will grant a rehearing and remand the case for evidence to be taken in that connection.

It is therefore ordered, adjudged, and decreed that the verdict and the judgment herein be set aside, and that the case be remanded for trial.

LAND and ST. PAUL, JJ., dissent.

## On Application for Rehearing.

PER CURIAM. In this case, it appearing that there is a controversy as to whether the trial court, in granting time for presenting and signing the bills of exception, acted before or after imposing sentence and the taking of the appeal, a rehearing is granted, and this cause is remanded for the purpose of taking the testimony and correction of the minutes and record, if such should be necessary, so as to show the facts on the point in question.

## On Rehearing.

DAWKINS, J. A rehearing was granted, and this cause remanded for the purpose of determining whether or not additional time had been granted counsel for defendant to prepare and present bills of exception covering the several points reserved during the trial, before the sentence and granting of the order of appeal; and, if so, that the court might correct the minutes accordingly. This has been done; that is, testimony has been taken upon the subject, and the trial court,

considering that the reservation was timely made, corrected its minutes to correspond to these facts. .

Counsel for the state contend that this was not legally permissible, but that the bills must have been actually presented and signed before appeal, citing in support thereof the following cases: State v. Romero, 5 La. Ann. 24; State v. Artus, 110 La. 442, 34 South. 596; State v. Hauser, 112 La. 328, 36 South. 396; State v. Ruffin, 117 La. 358, 41 South. 647; State v. Griggsby, 117 La. 1048, 42 South. 497; State v. Butler, 137 La. 525, 68 South. 859; State v. Barrett, 137 La. 535, 68 South. 945, and State v. Casey, 140 La. 143, 72 South. 904.

In the first case, the syllabus reads:

"A bill of exceptions should be presented at the trial, or the point should be then expressly reserved and noted, and after the trial embodied in a bill of exceptions, *without unnecessary delay*, while the facts are fresh in the memory of both the judge and counsel. A bill of exceptions to a proceeding during a trial which took place the 27th of June, but which was not presented until the 28th of July following, cannot be considered." (Our italics.)

No question as to an extension of time by the judge was raised or considered; but the bill was rejected because of the "unnecessary delay" and the intimation thrown out that it would not be practicable for the true facts to be presented after the lapse of a month.

The second case came to this court with the bills of exception unsigned by the judge, and an ex parte motion was filed here some three months after the trial, and after the transcript had been lodged here, for an order to the district attorney to inspect and the judge to sign the bills, which it was said had been reserved during the trial. It was also alleged in the motion that the judge had refused to sign the bills until presented to the district attorney, and counsel for the defense had sent them to the clerk of the trial court with request that they be presented to counsel for the state for inspection and then forwarded to the judge for signing. We sim-

ply held that we could not sanction such lax methods; that it was counsel's duty to see that these things were done, and declined to grant said motion at that late date. There was no suggestion that time had been allowed for preparing and presenting the bills after appeal.

In the third case, while there was no suggestion that time had been allowed before appeal, the bill was presented and signed nunc pro tunc ten days afterwards. We said, through the organ of the court, that this was "too late," but, in view of the importance of the question and the fact that the conclusion that we had reached would not result in "setting aside the verdict and reversal of the judgment,". we would consider the matter, but that "our action in this matter must not be taken as a precedent." As we see it, this did not touch the point in this case, i. e., the granting of time before appeal for signing bills.

In State v. Ruffin, there were no bills of exception, the judge having refused to sign them for the reason that they had not been timely presented, which was not disputed. Again, the point at issue here was not considered.

In the Griggsby Case, the bills were in the record duly signed, although they had not been filed by the clerk until October 2, 1906, and the accused had been sentenced and an order of appeal entered on July 24th. Objection was made that the bills had not been presented to counsel for the state, and we said that, while this should be done in all cases, inasmuch as the judge had signed them, we would consider them, which was done. It is true that we also said that the matter should be "regulated by rules of court which should require such presentation without unnecessary delay and before an appeal is taken"; but again the question in the present case was not decided.

In State v. Butler, the bill was signed six days after the appeal was entered, and we

cited State v. Hauser, supra, in support of the proposition that it could not be considered, and, in doing so, said:

"This doctrine seems to be based on the principle that an appeal in a criminal case, being suspensive in its nature, divests the jurisdiction of the lower court. * * * *The minutes of court do not show that time was granted for the presentation of either bill of exception.*"

Here, also, the question of the right to allow time for presenting bills after appeal was not before the court, but the concluding portion of the quotation above, which we have italicised, clearly intimates that such might be done.

In the Barrett Case, the appeal was taken on April 15th, and the bills were signed on April 23d and May 5th. We refused to consider them, citing State v. Butler, supra, and the prior jurisprudence, but again said:

"*The record does not show that time was granted for the presentation of any one of the bills of exception.*"

In the last case, State v. Casey, the appeal was taken June 5th, and the bills were presented and signed on the 6th, but this court refused to consider them "*in the absence of circumstances which excuse the delay.*"

All italics are by the writer.

On the other hand, in the case of State v. Curtis, 138 La. 911, 70 South. 878, we said:

"He [the defendant] brings the case up on four bills of exception, but it is suggested in the brief filed by the State that, under the authority of State v. Butler, 137 La. 525, 68 South. 859, and State v. Barrett, 137 La. 535, 68 South. 945, the appeal should be dismissed, for the reason that the bills were not signed by the judge until after the appeal had been granted. It appears, however, that they were properly reserved, and we find in the transcript two letters from the trial judge (to defendant's counsel and the prosecuting officer, respectively) in which the judge states, in effect, that the fault was his, and we do not think that the consequences should be visited on defendant; *the action of the judge having been tantamount to the granting of time for the signing of the bills.*" (Italics ours.)

[4-8] It is unquestionably true that the granting of the appeal divests the trial court of jurisdiction, in so far as the performance of any act requiring the exercise of judicial discretion or judgment is concerned; but as to ministerial duties, which are necessary to have the record show what took place, we think it has the power, within reasonable bounds before granting such appeal, to reserve the right to do whatever is necessary to accomplish that result. The signing of a bill of exception is so much a ministerial duty that, when timely applied for, mandamus will lie to compel its performance. State ex rel. Mullen v. Drew, Judge, 32 La. Ann. 1043; State v. Ford, 37 La. Ann. 456; State ex rel. Wyly v. Judge, 35 La. Ann. 248. The judge cannot be compelled, of course, to sign a bill reciting facts which, according to his recollection did not happen, but he must, where the bill is reserved and timely presented, at least state what his conception of the matter is. Where time is requested before appeal, the judge is called upon to exercise a sound discretion, and may refuse or grant it within reasonable limits, not to exceed the completion and filing of the transcript within the return day, provided he acts before losing jurisdiction. When this has been done, nothing remains but to execute the order or duty which he has imposed upon himself while the case was still in his hands. If the accused obtains an appeal before the bills are signed, or without being given time within which to present them, the necessary consequence is that he waives or abandons them, and the case comes up on such other matters as may properly appear in the record.

We agree with the lower judge, that the evidence taken under the order remanding the case on rehearing shows that time was granted before appeal within which to present the bills of exception for signing, and that this was done within the limits fixed. Hence they are properly before us for consideration.

We have again carefully considered the issues raised by the bills which we found on the former hearing justified the setting aside of the verdict, and can see no reason for changing our views.

[9] The author of this opinion tried very hard, in the recent constitutional convention to have it provided that the trial judge might discuss and analyze the testimony for the benefit of the jury in criminal cases, as is done in the federal courts and in some of our sister states; but his efforts were overwhelmingly defeated—the argument being that the influence of the judge's views upon the minds of the jury would be too great. Hence, it is the fixed policy of the law in this state, made so expressly by statute, that he cannot let the jury know what his opinion on the facts is; so that, when the district attorney told the jury that he (the judge) had not believed the witnesses of accused in this case when they testified to the same facts in the civil case, the result was that it brought to bear this same influence upon the minds of the jury, in a way that it could not be effaced by telling counsel to stay within the record, or the jury to pay no attention to it.

For the reasons assigned, our former decree is reinstated and made the final judgment of this court.

ST. PAUL, J., concurs in the decree.